IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**FILED**

**MAR 3 1 2003**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

JULIA YATES                           }
                                      }
    **Plaintiff,**                    }
                                      }
v.                                    }          Case No. CV 01-B-1582-S
                                      }
AT&T COMMUNICATIONS, INC.             }
                                      }
    **Defendant.**                    }

**ENTERED**

**APR - 1 2003**

<u>**MEMORANDUM OPINION**</u>[1]

Currently before the court are a Motion for Summary Judgment and a Motion to Strike, both

filed by defendant, AT&T Corp. ("defendant" or "AT&T").[2] Plaintiff, Julia Yates ("plaintiff" or

"Yates"), asserts claims in this action for sexual harassment and retaliation under Title VII of the

Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000 *et seq.*, in addition to pendent state law

claims for invasion of privacy and assault and battery.  Upon consideration of the record, the

submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion

---

[1]At the conclusion of oral argument, the court informed the parties of its intention to grant
summary judgment in favor of defendant.  The court requested that counsel for defendant prepare
a proposed memorandum opinion for the court.  Although the court has made some changes to the
opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion.  The
court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of
drafting important opinions to litigants."  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373
n.46 (11th Cir. 1997).  This is an important opinion.  Before requesting a proposed opinion from
defendant's counsel, the court had reached a firm decision as to the appropriate outcome.  Counsel
drafted the opinion according to the express instructions of the court as to its contents.  These
instructions were stated to defendant's counsel, with plaintiff's counsel present, following oral
argument.  Although largely taken from the opinion proposed by defendant's counsel, the court
personally reviewed this opinion, and the opinion reflects the court's own conclusions.

[2]AT&T is misnamed in the Complaint as AT&T Communications, Inc.  Defendant has
clarified its correct name in its Answer and subsequent pleadings before this court as "AT&T Corp."



that defendant's Motion for Summary Judgment is due to be granted, and defendant's Motion to Strike is due to be granted in part and denied in part.

## MOTION FOR SUMMARY JUDGMENT

### I. FACTUAL SUMMARY

**A. Plaintiff's Employment with AT&T**

Plaintiff became employed with AT&T in May of 1978. (Yates Dep. at 31; Jewell Decl. ¶ 4.) At all times relevant to this action, plaintiff has held the position of teleconference specialist in AT&T's Forestdale, Alabama facility. (Jewell Decl. ¶¶ 4, 6-7.) All teleconference specialists within this facility are assigned to a supervisor or "coach" on an annual rotating basis, with each coach supervising approximately twenty teleconference specialists simultaneously. (*Id.* ¶ 7.) Coaches are responsible for providing technical assistance and support to the teleconference specialists whom they supervise, in addition to monitoring their work and performance on a daily basis. (*See Id.* ¶ 7; Yates Dep. at 43.) Herman Jones ("Jones") was assigned as plaintiff's coach during 1999, effective at the beginning of the year. (Jewell Decl. ¶ 7; Yates Dep. at 48, 77.) Plaintiff testified that she had no objection to being assigned to Jones's supervision, and that she found him to be supportive, sympathetic, and fair as a coach. (*Id.* at 84, 86.) Plaintiff further testified that she had never personally encountered or otherwise witnessed any inappropriate conduct by Jones at any time prior to August of 1999. (*See* Yates Dep. at 83-84, 86.)

**i. Incident Involving Jones Occurring in August, 1999**

Plaintiff alleges that on an unspecified date during August of 1999, Jones approached her at her work station and stated that he needed to speak with her. (*Id.* at 95-97.) Jones then allegedly escorted plaintiff to an unused room within the facility where he put his arms around her and kissed

her on the mouth, while pressing his body against her.  (*Id.* at 96-98, 102-05, 240; Compl. ¶ 5.)

Plaintiff testified that, to her knowledge, no one witnessed the alleged kiss or Jones escorting her out

of the teleconference room.  (Yates Dep. at 111-12.)  Plaintiff testified that during the weeks

following the alleged kiss, Jones made no other physical advances toward her, but that he

occasionally "leered" at her.  (*Id.* at 118-19.)  Plaintiff defined Jones's "leering" as staring at her

breasts or in that vicinity.  (*Id.* at 119.)

**ii.  Plaintiff's Absence From Work**

After the alleged incident involving Jones, plaintiff took an extended absence from work

seeking disability benefits pursuant to AT&T's Sickness and Accident Disability Plan ("the Plan").

(*Id.* at 142; Jewell Decl. ¶ 18.)  Plaintiff received disability benefits under the Plan from August of

1999 until March 23, 2000.  (Yates Dep. at 154; Jewell Decl. ¶ 18.)  Plaintiff was notified on April

6, 2000 by the administrator of the Plan, MetLife Insurance Company ( "MetLife"), that she needed

to provide medical documentation as required by the Plan in order for her benefits to be certified

after March 23, 2000.  (Yates Dep. at 190-91; Ex. 8, *id.*)  Plaintiff was given a period of time within

which to provide the medical documentation, but she failed to sufficiently comply with the Plan's

requirement.  (Ex. 8, *id.*; Jewell Decl. ¶ 18.)  Plaintiff was therefore notified on May 3, 2000, that

her benefits were decertified as of March 23, 2000.  (Yates Dep. at 194; Ex. 9, *id.*)  As a result of her

decertification, plaintiff was required to repay MetLife for benefits received after March 23, 2000,

in the amount of $4,766.  (*Id.* at 201.)  It is undisputed that plaintiff was aware of this requirement

at the time of her decertification on May 3, 2000.  (*Id.* at 190-92.)  Plaintiff ultimately returned to

work at AT&T during the first week of August, 2000.  (*Id.* at 206; Jewel Decl. ¶¶ 7-10.)

### iii. AT&T's Policies and Plaintiff's Complaint Regarding Jones

AT&T has at all relevant times promulgated a written policy which prohibits discrimination and/or harassment on the basis of race, sex, religion, national origin, and disability, among other enumerated protected categories, in any employment decision or in the administration of its personnel policies or practices. (*See* Ex. A., Riley Decl.) The policy is set forth in the AT&T Equal Opportunity/Affirmative Action Employee Reference Guide ("EO/AA policy"), which outlines the objectives and components of the policy, and includes separate headings for its sexual harassment policy and its complaint procedures for employees who believe they have been subjected to unlawful harassment and/or discrimination. (Riley Decl. ¶¶ 3, 4; Ex. A, *id.*)  Pursuant to the policy's complaint procedures, employees are given the option of reporting complaints to their supervisor, to an EO/AA Representative, or both. (*Id.* ¶ 4.)  AT&T's complaint procedures are also published on AT&T's intranet site, to which all employees have access. (*Id.*)

Plaintiff acknowledges that she was aware of AT&T's EO/AA policy during all times relevant to the present action. (Yates Dep. at 69-71, 73-74, 141.) Plaintiff also testified that at the time she was allegedly kissed by Jones in August of 1999, she believed she had been subjected to an inappropriate touching in violation of AT&T's policies against sexual harassment. (*Id.* at 139.) Plaintiff testified as follows:

> Q.   Did you consider the manner in which Mr. Jones is alleged to have kissed you to be an inappropriate touching for the workplace?
>
> A.   Yes.
>
> * * *
>
> Q.   Was it of a sexual nature, in your opinion?
>
> A.   Yes.

> Q.      And were you aware that, because of those facts, it would be a violation of AT&T's policy against sexual harassment?
>
> A.      Yes.

(*Id.*)

Notwithstanding plaintiff's belief in August of 1999 that she had been subjected to sexual harassment, plaintiff failed to report the alleged incident or any other matter pertaining to Jones until approximately one year later. (*Id.* at 125-27, 139-40, 206-07.) Plaintiff's initial complaint was made to Shirley Johnson, a coach at the Forestdale facility, who referred the complaint, in turn, to Linda Jewell ("Jewell"), Center Manager of the Forestdale facility. (Jewell Dep. at 13-14.) Plaintiff reported the complaint to Jewell personally on or about August 11, 2000, shortly after she returned to work. (Yates Dep. at 140; Jewell Dep. at 14; Jewell Decl. ¶ 8.)

Upon receiving plaintiff's complaint, Jewell instructed plaintiff to contact Virginia Riley ("Riley"), a representative within AT&T's EO/AA organization. (Jewell Decl. ¶ 9; Yates Dep. at 215, 217.) Jewell also informed plaintiff about AT&T's internal investigation procedures, and provided plaintiff with Riley's contact information. (Jewell Decl. ¶ 9; Yates Dep. at 215-17.) Immediately after meeting with plaintiff, Jewell contacted Riley personally to inform her of the complaint, and Riley interviewed plaintiff by telephone on the same day. (Jewell Decl. ¶ 9; Riley Decl. ¶ 6; Yates Dep. at 222.) At this time, Jewell and Riley determined, without rendering a judgment as to the merits of the complaint, that Jones would not have any direct supervisory authority over plaintiff at any time in the future. (Jewell Dep. at 20-21; Jewell Decl. ¶ 10; Riley Decl. ¶ 8.)

**B. AT&T's Internal Investigation**

AT&T's internal investigation commenced on August 11, 2000, the same day plaintiff complained to Jewell about Jones. (Riley Decl. ¶ 6; Jewell Decl. ¶ 9.) In addition to the alleged kiss and staring by Herman Jones, plaintiff identified several other incidents during the initial stages of AT&T's investigation which allegedly occurred during or prior to August of 1999, including: that Jones commented he "would build plaintiff a house"; that Jones jokingly commented to a third party that he and plaintiff were getting married; that Jones complimented plaintiff's appearance; and that plaintiff allegedly observed Jones kiss one of her coworkers, Jennifer Scott. (*See* Riley Decl. ¶ 9.) Plaintiff further alleged that Jones called her at home subsequent to August 25, 1999, while she was absent from work seeking disability benefits.[3] (*Id.*) All of the above allegations were included as part of Riley's investigation. (*Id.*)

After ongoing conversations with plaintiff, Riley visited the Forestdale facility on August 17, 2000. (*Id.*) As part of her on-site investigation, Riley met separately with each of the following individuals: plaintiff, Jones, Debra Hartsfield, Myrtle McCann, Mimi Frye, Louise White, Ella Williams, and Jennifer Scott. (*Id.* ¶ 10.) Riley had previously requested that plaintiff identify any employees who may have relevant information about her complaint, and all such employees were interviewed by Riley. (*Id.* ¶¶ 9-10; Yates Dep. at 225-28.) According to Riley, the individuals interviewed failed to provide information which corroborated or otherwise supported plaintiff's allegations against Jones. (Riley Decl. ¶ 11.) None of the individuals acknowledged witnessing the

---

[3]Plaintiff alleges in her complaint that Jones called her at home and "ask [sic] for sex." (Compl. ¶ 5.) Plaintiff testified in her deposition that she never reported the alleged requests for sex to anyone at AT&T at any time. (Yates Dep. at 310.)

alleged kiss by Jones in August of 1999, or observing any misconduct by Jones.  (*Id.*)  Further, Jennifer Scott denied that she was ever kissed by Jones.  (*Id.*)

On September 5, 2000, plaintiff complained about further incidents of staring by Jones, and an incident where Jones allegedly refused to assist her with a conference call.  (*Id.* ¶ 12.)  With respect to the latter incident, plaintiff testified that Jones did immediately refer her to George Smith, another coach at the facility, and that Smith provided her with the needed assistance.  (Yates Dep. at 230-31.)  Riley responded to plaintiff's complaints by conducting a telephone interview with George Smith on September 5, 2000.  (Riley Decl. ¶ 12.)  Riley also interviewed Shirley Johnson, plaintiff's supervisor or "coach" at the time, on September 7, 2000.  (*Id.*)  Riley testified that neither Johnson nor Smith could attest to any inappropriate conduct by Jones.  (*Id.*)

AT&T completed its internal investigation on October 13, 2000, concluding that plaintiff's allegations against Jones were not substantiated during the course of its investigation.  (*Id.* ¶ 13.)  Subsequent to the date the investigation closed, plaintiff made several additional complaints about Jones to Jewell, including that Jones laughed, stared or smirked at her on several occasions, and that Jones made a comment during a telephone conversation in his cubicle that he would give someone "a big, wet smacker."  (*Id.* ¶ 17.)  Plaintiff was not a party to the conversation, but claims to have overheard the alleged comment from her work station.  (Yates Dep. at 328.)  Jewell responded to these complaints by speaking with Jones, who conceded that he had talked and laughed with a coworker on one occasion, but denied that the laughter was directed at plaintiff or that it related to her in any way.  (Jewell Decl. ¶ 17.)  Jewell recommended to Jones that he attempt to avoid any future contact with plaintiff.  (*Id.*)

In further response to plaintiff's complaint, plaintiff was given the option of relocating to

another facility in the same position, which plaintiff declined. (*Id.* ¶ 15.) Jewell also recommended to plaintiff on numerous occasions that she move to a station away from Jones's cubicle. (*Id.* ¶ 17; Jewell Dep. at 28, 56-57, 71; Yates Dep. at 257.)  Plaintiff admitted that since her return to work in August of 2000, she has chosen to sit at a station in close proximity to Jones's office, in spite of the fact that she has the option of sitting at any station within the teleconference room, which has a total of approximately one hundred (100) work stations to choose from.[4]  (Yates Dep. at 257; Jewell Decl. ¶ 6.)

In addition to her other allegations concerning Herman Jones, plaintiff testified that since returning to work in August of 1999, Jones has made grunting noises such as "um-um" which she believes are directed at her.  (Yates Dep. at 253-54, 258, 317-18.)  The record is unclear as to whether plaintiff ever reported these allegations to AT&T.  It is undisputed that plaintiff never reported the alleged phone calls, wherein plaintiff claims that Jones requested sex, to anyone at AT&T at any time.  (*Id.* at 310.)  Plaintiff also did not include or in any way reference these calls in her charge of discrimination filed with the EEOC.[5]  (*See* Ex. 23, *id.*, Pl.'s EEOC Charge.)

---

[4]Plaintiff's testimony on this point is controverted by a statement contained in her First Declaration.  This issue is addressed in the court's analysis of defendant's Motion to Strike.  (*See infra* pp. 29-30.)

[5]In her EEOC Charge, filed on January 24, 2001, plaintiff states:
I was employed by the employer during May 1978.  I currently hold the title of Conference Specialist.  I was sexually harassed by a supervisor during 1999.  The offense was so severe that my Doctors kept me off work for approximately one year. I returned to work on August 8, 2000, and made a formal complaint of the harassment.  Subsequent to that complaint the employer subjected me to unlawful retaliation in that it started deducting $4000.00 from my pay for leave I took.
(Ex. 23, Yates Dep., Pl.'s EEOC Charge.)  She did not include any additional allegations in a questionnaire she filled out and sent to the EEOC.  (Pl.'s Ex. 7, Charge Questionnaire.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. DISCUSSION

Plaintiff asserts claims in this action for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000 *et seq.*, in addition to pendent state law claims for invasion of privacy and assault and battery. AT&T contends that the majority of plaintiff's sexual harassment allegations are time barred as outside the 180-day period for filing a

9

charge of discrimination, and that the alleged incidents within the limitations period do not amount to severe or pervasive sexual harassment under Title VII. AT&T further contends that, even if plaintiff suffered actionable harassment for the purposes of Title VII, it is entitled to a complete affirmative defense under *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

For the reasons set forth below, the court agrees that summary judgment is proper on plaintiff's sexual harassment claim. The court also finds that no genuine issue of material fact exists with respect to plaintiff's retaliation claim or her state law claims, and that AT&T is therefore entitled to summary judgment on these claims as well.

## A. Sexual Harassment Claim

To establish a claim of sexual harassment under Title VII, plaintiff must show 1) that she is a member of a protected class; 2) that she was subjected to unwelcome sexual advances, requests for sexual favors, and other conduct of a sexual nature; 3) that the harassing conduct was based on her sex; 4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment; and 5) that there is a basis for holding the defendant liable. *Gupta v. Florida Board of Regents*, 212 F.3d 571, 582 (11th Cir. 2000). The Eleventh Circuit has made clear that the evidence to be used in determining whether plaintiff has been subjected to actionable sexual harassment must be based on the protected characteristic at issue, the plaintiff's sex/gender, to survive summary judgment. *See, e.g., Gupta*, 212 F.3d at 583 ("[T]he statements and conduct must be of a sexual or gender-related nature . . . before they are considered in determining whether the severe or pervasive requirement is met. Innocuous statements or conduct, or boorish ones that do not relate to the sex of the actor or the offended party (the plaintiff), are not counted.").

The parties, in their respective briefs and arguments, categorize plaintiff's allegations of sexual harassment on the basis of those incidents occurring prior to plaintiff's absence beginning in August of 1999, and those incidents occurring subsequent to plaintiff's return to work in August of 2000. The incidents occurring prior to and during August 1999 include (i) Jones allegedly kissing plaintiff on the mouth on a single occasion; (ii) several instances of alleged staring by Jones; (iii) a comment by Jones about building plaintiff a house; (iv) a comment by Jones that he and plaintiff were getting married; (v) Jones complimenting plaintiff's appearance; and (vi) plaintiff allegedly witnessing Jones kiss Jennifer Scott on one occasion. The incidents alleged to have occurred after August 2000 include (i) Jones's refusal to assist plaintiff with a conference call; (ii) further alleged incidents of laughing, staring, or smirking by Jones; (iii) Jones's alleged comment during a phone conversation with a third party about giving someone "a big, wet smacker"; and (iv) incidents of Jones making "grunting noises" such as "um-um." As to the alleged phone calls wherein plaintiff claims that Jones requested sex, the record is unclear as to the exact timing or number of the calls.

**i. The August 1999 and prior incidents are time-barred.**

AT&T contends that the incidents during and prior to August of 1999 are time-barred as outside the 180-day limitations period for filing a charge of discrimination. The court agrees. Title VII requires that an aggrieved employee file a charge of discrimination "within one hundred and eighty days after the alleged unlawful employment practice occurred."[6] 42 U.S.C. § 2000e-5(e). The

---

[6]The time period for filing a charge of discrimination may be extended to 300 days if the complainant first files a charge with a state or local agency in a "deferral state." *Maynard v. Pneumatic Products Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001). Deferral states are those that prohibit the unlawful discrimination complained of and that have established state or local authorities empowered to grant relief from the unlawful conduct. *Maynard*, 256 F.3d at 1263. The 180-day limitations period, instead of the 300-day period, applies to the instant case because plaintiff's charge was filed in Alabama, and Alabama is not a deferral state. *See Hipp v. Liberty*

180-day period begins to run when a plaintiff knew or reasonably should have known that she was subjected to unlawful discrimination. *Carter v. West Publishing Co.*, 225 F.3d 1258, 1265 (11th Cir. 2000). The continuing violation doctrine creates an exception to this rule, allowing a plaintiff to file suit on the basis of acts outside the limitations period where "the last occurrence of an instance of discrimination occurred within the 180 day window." *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir. 1992). However, the continuing violation doctrine will not serve "to give a second chance to an employee who allowed a legitimate Title VII claim to lapse." *Carter*, 225 F.3d at 1264 (quoting *Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793, 800 (11th Cir. 1988)).

Plaintiff acknowledges that at the time she was allegedly kissed by Jones in August of 1999, she believed that she had been subjected to an inappropriate touching that violated AT&T's policy against sexual harassment. (Yates Dep. at 139; Pl.'s Br. at 13.) Plaintiff also does not refute that she failed to report the incident until approximately one year later. (Yates Dep. at 125-27, 140, 206-07; Pl.'s Br. at 13.) Plaintiff filed her EEOC charge on January 24, 2001, well after the date she reported the incident. (*See* Ex. 23, Yates Dep., Pl.'s EEOC Charge.)

Plaintiff contends that the kiss during August 1999 and all prior incidents were part of a continuing violation. (Pl.'s Br. at 14.) Plaintiff alleges that she was "afraid of losing her job, shamed, and felt that no one would believe her," and that "[u]nder these circumstances, a plaintiff should be excused for letting a valid claim lapse." (*Id.*) Plaintiff's purported shame and fear of losing her job are not sufficient grounds for tolling the limitations period. *Carter*, 225 F.3d at 1266 (holding that a plaintiff's "purported fear of retaliation . . . is not a ground for equitable tolling"); *see also Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir. 1999) ("[A]n employee's subjective fears

_____

*Nat'l Life Ins. Co.*, 252 F.3d 1208, 1220 (11th Cir. 2001).

of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment."). Because plaintiff failed to timely file a charge of discrimination with respect to the alleged kiss and prior incidents, these incidents are time-barred.

The court notes that *National Railroad Passenger Corporation v. Morgan*, 122 S. Ct. 2061 (2002), does not dictate a different outcome in the present case. In *Morgan*, the United States Supreme Court found that Title VII harassment cases may be treated differently than other Title VII cases with regard to the limitations period; it may be appropriate to consider otherwise untimely acts when part of a continuous, ongoing incident for purposes of determining liability. *Morgan*, 122 U.S. at 2074. The plaintiff in *Morgan* alleged that he was consistently harassed throughout his employment with racial jokes and comments and disciplined more harshly than others on account of his race. *Id.* at 2068. This case does not present long term behavior of a similar nature to that found in *Morgan*. Most of plaintiff's claims do not even reflect conduct on the basis of sex and thus are not acts "contributing" to the same hostile environment. Moreover, plaintiff's brief and arguments in opposition to summary judgment characterize the post-August 2000 incidents more as alleged retaliation for her complaint about Jones than as alleged sexual harassment. Given that this case realistically involves at most a few limited discrete acts, the analysis in *Morgan* is not applicable.

**ii. Plaintiff has failed to establish actionable harassment under Title VII.**

Even assuming these incidents are not time-barred, the court is of the opinion that plaintiff does not complain of behavior that amounts to actionable sexual harassment. Plaintiff alleges that during or prior to August of 1999, Jones allegedly kissed her on the mouth, stared at her breasts or

13

in that vicinity, made comments that he would build plaintiff a house and that he and plaintiff were getting married, complimented her appearance, and allegedly kissed Jennifer Scott, plaintiff's coworker, on one occasion, which incident plaintiff claims to have witnessed. Plaintiff alleges that after her return to work in August of 2000, Jones refused to assist her with a conference call, laughed, stared, or smirked at her, made a comment during a phone conversation with a third party, which plaintiff claims to have overheard, about giving someone "a big, wet smacker," and made "grunting noises" such as "um-um" which plaintiff believes were directed at her. As to the alleged phone calls wherein plaintiff claims that Jones requested sex, the record is unclear as to the exact timing or number of the calls. Plaintiff testified that the calls occurred while she was absent from work sometime between August of 1999 and August of 2000.

The court finds that the prima facie requirement of sex-based conduct is not met with regard to the majority of plaintiff's allegations. As previously discussed, a plaintiff alleging sexual harassment must come forward with evidence that the allegedly harassing behavior was based on the protected characteristic at issue to survive summary judgment. *Gupta*, 212 F.3d at 583. The plaintiff must show that the statements or conduct are "of a sexual or gender-related nature" before the question of severity or pervasiveness is reached. *Id.* "Innocuous statements or conduct, or boorish ones that do not relate to the sex of the actor or the offended party . . . are not counted." *Id.* The comments Jones made about building plaintiff a house and about the two getting married are not based on plaintiff's gender, and, plaintiff concedes, were made only in jest. The alleged laughing and smirking incidents, while perhaps annoying to plaintiff, do not amount to sex-based conduct because plaintiff has produced no evidence that this conduct was directed at her or that the conduct was based on her sex. Similarly, the alleged kiss between Jones and Scott did not involve plaintiff,

14

and therefore could not have been based on *plaintiff's* sex. Relative to the alleged compliments by Jones, the *Gupta* court found it "debatable" whether the statement "you look beautiful" is sex-based, but went on to hold that "[a] man can compliment a woman's looks . . . on one or several occasions . . . without fear of being found guilty of sexual harassment . . . ." *Gupta*, 212 F.3d at 584. Plaintiff in the instant case has failed to clarify the substance of the compliments, other than to allege that they were of her appearance generally. It therefore cannot be said that the compliments were made on the basis of plaintiff's sex or because of her gender.

With respect to plaintiff's allegations concerning Jones's alleged refusal to assist her with a conference call, the sex based requirement is not met because plaintiff has produced no evidence that the conduct was directed at her *because* she is female. Instead, it is the type of ordinary tribulation common to the workplace that Title VII does not reach. Moreover, plaintiff admits with respect to this incident that Jones immediately referred her request to another coach, who promptly provided her with the needed assistance. (Yates Dep. at 231.) Plaintiff has also failed to show that Jones's alleged comment about giving someone a "big wet smacker" was based on *her* sex. The alleged comment was made to a third party during a phone conversation in Jones's office to which plaintiff was not a party. (*See* Yates Dep. at 328.) Finally, the frequency and nature of the alleged incidents of staring and grunting, even if based on plaintiff's sex, do not rise to the level of actionable sexual harassment. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1248 (11th Cir. 1999) ("[A]lthough 'following and staring' can betray romantic or sexual attraction, the everyday observation of fellow employees in the workplace is also a natural and unavoidable occurrence when people work together . . . .").

In sum, the court finds that the only incidents alleged which arguably meet the requirement of sex-based conduct are the alleged kiss during August of 1999 and the alleged phone calls to plaintiff's home prior to her return to work in August of 2000 wherein plaintiff claims that Jones requested sex. The next question, then, is whether these incidents amount to severe or pervasive sexual harassment under Title VII. The severe or pervasive requirement "tests the mettle of most sexual harassment claims." *Gupta*, 212 F.3d at 583. The *Gupta* court held:

> Requiring the plaintiff to prove that the harassment is severe or pervasive ensures that title VII does not become a mere "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84, 141 L. Ed. 2d 662 (1998). This requirement is regarded "as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace–such as male-on-male horseplay or intersexual flirtation–for discriminatory 'conditions of employment.'" *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998, 1003, 140 L. Ed. 2d 201 (1998).

*Id.*

In *Mendoza v. Borden, Inc.*, the court considered allegations similar to those in the present case, and held that the conduct was not sufficiently severe or pervasive to have sufficiently altered the terms and conditions of the plaintiff's employment. 195 F.3d at 1249-51. The plaintiff in *Mendoza* alleged the following conduct in support of her claim for sexual harassment: (i) the harasser commented to plaintiff, "I'm getting fired up"; (ii) "rubbed his hip against plaintiff's hip while touching her shoulder and smiling"; (iii) made sniffing sounds on two occasions while looking at Mendoza's groin area; (v) sniffed at her on one occasion without looking at her groin; and (vi) "constant[ly]" followed and stared at the plaintiff in a "very obvious fashion." *Id.* at 1242-44. Finding that these incidents were neither severe nor pervasive, the court noted that "[w]ere we to conclude that the conduct established by Mendoza was sufficiently severe or pervasive to alter her terms or conditions of employment, we would establish a baseline of actionable conduct that is far

16

below that established by other circuits." *Id.* at 1251. A comparison of plaintiff's allegations with those at issue in *Mendoza* and the other cases cited therein supports a conclusion that plaintiff has not suffered actionable harassment. *See, e.g., Shepherd v. Comptroller of Public Accounts of Texas*, 168 F.3d 871, 872-75 (5th Cir. 1999) (holding that several incidents over a two-year period, including comment "your elbows are the same color as your nipples," another comment that plaintiff had big thighs, touching plaintiff's arm, and attempts to look down the plaintiff's dress, were insufficient to support hostile-environment claim); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (holding that statement that plaintiff had the "sleekest ass" in office plus single incident of "deliberately" touching plaintiff's "breasts with some papers that he was holding in his hand" were insufficient to alter the terms or conditions of the plaintiff's employment); *Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1167-68 (7th Cir. 1996) (holding offensive comments including repeatedly calling the plaintiff a "sick bitch" insufficient under *Harris* because not necessarily gender-related); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753-54 (4th Cir. 1996) (holding evidence that the harasser "bumped into [the plaintiff], positioned a magnifying glass over [the plaintiff's] crotch, flipped his tie over to see its label, gave him a congratulatory kiss in the receiving line at [a] wedding, and stared at him in the bathroom" insufficient to establish violation of Title VII).[7]

---

  · [7]Even considering the sum total of plaintiff's allegations, including those incidents which plaintiff has failed to establish were sex-based, it is doubtful that the severe or pervasive requirement is met based on the cases cited above.

### iii. Plaintiff failed to make reasonable use of the available preventive and corrective measures under AT&T's policies and procedures.

Assuming for the sake of argument that plaintiff could establish a prima facie case of sexual harassment, her claim still fails as a matter of law because AT&T is entitled to an affirmative defense pursuant to *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). Under *Faragher/Ellerth*, the employer is not liable for a hostile environment created by a supervisor if the employer proves: (1) that it exercised reasonable care to prevent and correct promptly any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided by the employer to avoid harm or otherwise failed to avoid harm. *Ellerth*, 524 U.S. at 765. If an employer has effectively promulgated a workable anti-harassment policy, then it has met its burden under the first element of *Faragher/Ellerth. Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1297-99 (11th Cir. 2000) (holding that employers can meet their initial burden under the affirmative defense by promulgating and disseminating an effective anti-harassment policy). It is undisputed that AT&T promulgated a workable anti-harassment policy, as outlined in the AT&T Equal Opportunity and Affirmative Action policy ("EO/AA policy"), and that it widely disseminated this policy to employees. (Riley Decl.¶ 3; Ex. A, *id.*; Yates Dep. at 69-71, 73-74). The EO/AA policy provides information about AT&T's anti-discrimination and harassment policies, as well as detailed information about complaint procedures for employees who believe they have been subjected to unlawful discrimination. (Riley Decl. ¶ 3; Ex. A, *id.*) Pursuant to the policy, employees are instructed to promptly report any complaints of discrimination and/or harassment to their supervisor, a

18

representative of AT&T's EO/AA organization, or both. (*Id.*)  AT&T's complaint procedures are also publicized and accessible to employees via AT&T's intranet site. (*Id.*)

Immediately after receiving plaintiff's complaint, AT&T initiated a full scale investigation pursuant to its EO/AA policies and procedures. (Jewell Decl.¶ 6; Riley Decl.¶ 9.)  During the course of the investigation, a total of eight employees were interviewed, in addition to plaintiff and Herman Jones. (Riley Decl. ¶¶ 10, 12.)  AT&T also took several measures to address plaintiff's complaint, including (i) counseling Jones about AT&T's sexual harassment policy, (ii) determining that Jones would not have direct supervisory authority over plaintiff in the future, and (iii) providing plaintiff with an option to transfer to another facility in the same position, which she declined.  AT&T's written policies and procedures, as well as its actions taken pursuant to those policies and procedures with respect to plaintiff's complaint, provides convincing evidence that AT&T exercised reasonable care to prevent and promptly address her complaints of harassment.  The first prong of *Faragher/Ellerth* is therefore satisfied.

The second prong of the affirmative defense requires a showing that plaintiff failed to take advantage of the preventive and corrective measures under AT&T's policies.  The Eleventh Circuit has held that "[w]hen an employer has taken steps, such as promulgating a considered sexual harassment policy, to prevent sexual harassment in the workplace, an employee must provide adequate notice that the employer's directives have been breached so that the employer has the opportunity to correct the problem." *Coates v. Sundor Brands, Inc.*, 164 F. 3d 1361, 1366 (11th Cir. 1999); *see also Parkins v. Civil Constructors of Ill.*, 163 F.3d 1027, 1038 (7th Cir. 1998) ("The law against sexual harassment is not self-enforcing, and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem

exists.") (citations and internal quotations omitted). This is true even if the plaintiff claims she did

not use the complaint mechanism because she felt uncomfortable bringing forward her complaint.

*See Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir. 1999) ("While a victim of sexual harassment

may legitimately feel uncomfortable discussing the harassment with an employer, that inevitable

unpleasantness cannot excuse the employee from using the company's complaint mechanisms.").

       Plaintiff testified that she was familiar with AT&T's anti-harassment policies and complaint

procedures as outlined in the EO/AA policy. (Yates Dep. at 69-74, 141.) Plaintiff also testified that

she considered the alleged kiss in August 1999 to be an inappropriate touching of a sexual nature in

violation of AT&T's policies against sexual harassment. (*Id.* at 139.) Plaintiff asserts that she did

not complain earlier because she feared "nobody would believe her" and that "she might lose her

job." (*Id.* at 141.) Plaintiff identifies no basis for this alleged fear and, in fact, testified that she was

aware of AT&T's policies strictly forbidding retaliation for making complaints of discrimination.

(*Id.*) It is also undisputed that plaintiff never reported to anyone at AT&T at any time that Jones

called her at home and requested sex. (*Id.* at 310.) Instead, plaintiff makes this allegation for the

first time in her Complaint. (*See* Compl. ¶ 5.) The fact that plaintiff failed to report the alleged

requests for sex, coupled with plaintiff's one year delay in reporting the alleged kiss, indicates that

plaintiff unreasonably failed to take advantage of AT&T's complaint procedures.

       The evidence further supports the conclusion that plaintiff has failed to take advantage of the

corrective measures provided by AT&T in response to her complaint. Plaintiff does not refute that

since returning to work in August 2000, she has elected to sit at a station which is close to Jones's

office, even though she has approximately one hundred (100) other stations to choose from within

the teleconference room. (Jewell Decl. ¶ 6.) As discussed below, plaintiff's Declaration testimony

that she has, in fact, attempted to sit at a station away from Jones is stricken as inconsistent with her prior deposition testimony on this point. (*See infra* pp. 29-30.) To the extent that plaintiff takes issue with the *effectiveness* of AT&T's remedial measures, the court references plaintiff's own testimony admitting that, since August of 2000 when AT&T began its investigation, Jones has had no physical contact or verbal interaction with her. (Yates Dep. at 118-19, 253.)

The court finds that AT&T has carried its burden under *Faragher/Ellerth*. There is no evidence on which a reasonable jury could find that defendant did not exercise reasonable care to prevent and promptly correct harassing behavior. AT&T has at all relevant times had a written policy against sexual harassment which was widely disseminated to employees. Plaintiff was fully aware of AT&T's policy, as well as its complaint procedures under the policy. Plaintiff unreasonably failed to avail herself of the available measures under AT&T's policies and procedures against sexual harassment, by delaying approximately one year to report Jones, and in wholly failing to report the phone calls wherein Jones allegedly requested sex. Furthermore, the court finds that plaintiff unreasonably failed to take advantage of available preventative and corrective measures. Therefore, the court is of the opinion that AT&T has established its affirmative defense, and is entitled to summary judgment on plaintiff's claim of sexual harassment.

**B. Plaintiff's Retaliation Claim**

To establish a prima facie case of retaliation under Title VII, plaintiff must show 1) that she engaged in statutorily protected activity; 2) that she suffered an adverse employment action; and 3) that there is some *causal relationship* between the two events. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997) (emphasis added). Plaintiff has changed the grounds for her retaliation claim during the course of this action. Plaintiff's EEOC Charge and Complaint allege that the requirement

21

that she repay benefits received under AT&T's Sickness and Accident Disability Plan amounts to retaliation for her complaint of sexual harassment.  (*See* Ex. 23, Yates Dep., Pl.'s EEOC Charge; Compl. ¶ 5.)  The evidence shows that the decision to decertify benefits and require repayment by plaintiff was made in May of 2000, several months *prior* to her complaint of sexual harassment against Jones in August of 2000. (Yates Dep. at 194; Ex. 9, *id.*; Jewell Decl.¶ 18.)  In addition, plaintiff concedes in her brief that the decertification could not have been retaliatory because it "came before her report of sexual harassment." (Pl.'s Br. at 4.)  Therefore, the court finds that plaintiff has not established a prima facie case of retaliation, based on the requirement that she repay certain benefits she received, because this alleged adverse employment action occurred prior to plaintiff engaging in any statutorily protected activity. *See Goldsmtih v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) ("At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action.")

Plaintiff asserts for the first time in her brief, however, that the alleged retaliation was based on the fact that she was precluded from working in "extra benefits groups" because Herman Jones has supervisory authority over at least one of these groups.  (*Id.* at 6-7.)  As an initial matter, plaintiff's new basis of alleged retaliation is barred as outside the scope of her EEOC charge, which alleges retaliation arising only out her loss of benefits. *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (stating that courts may entertain allegations of a complaint which are reasonably related to or which can reasonably be expected to grow out of a charge of discrimination) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)); *Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1352 (S.D. Fla. 1999) ("'Allegations of new acts of discrimination . . . are not appropriate.'")

22

(quoting *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980)). However, even if the new claim were not procedurally barred, it still fails on the merits.

Plaintiff asserts that she lost an opportunity to work within one of several areas where teleconference specialists may earn a pay differential. The differential is available for work in the Internet group, Recording and Transcription group, or for performing functions at the Help Desk. (Jewell Decl. II ¶ 2.) Plaintiff contends that she was precluded from working in the Internet group because Herman Jones supervises this group, and AT&T determined, in response to plaintiff's August 2000 complaints about Jones's behavior, that Jones was not to have any supervisory authority over plaintiff in the future. (Pl.'s Br. at 7; Yates Decl. at 1.)[8] However, the admissible evidence shows that while Jones has supervisory authority over the Internet group, there are other areas which provide the same pay differential as the Internet group which are not supervised by Jones. (Jewell Decl. II ¶¶ 5, 6.) More importantly, the evidence reveals that during her employment with AT&T, plaintiff has at no time sought consideration for or otherwise expressed an interest in working in any area which pays a differential. (*Id.* at ¶¶ 4, 6.) Considering that plaintiff has never worked in or sought a position which pays a differential, she cannot demonstrate that she has suffered a "serious and material change in the terms and conditions of her employment" as is required to establish a prima facie case. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (stating that plaintiff must show a serious and material change in the terms, conditions, or privileges of the job before an employment action can be described as adverse) (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998)). The additional fact that plaintiff has the opportunity to work in

---

[8]Plaintiff's assertion in her Second Declaration that Jones had supervisory authority over all pay differential groups is stricken as inadmissible evidence under Rule 56(e). (*See infra* pp. 30-31.)

other groups which are not supervised by Jones, which pay exactly the same differential, further negates any argument that plaintiff has suffered any adverse employment action. Accordingly, to the extent plaintiff relies on an alleged lost opportunity to earn additional pay as support for her retaliation claim, the claim still fails as a matter of law.

Plaintiff's brief appears to proffer a third ground for her retaliation claim based on alleged continuing harassment by Jones subsequent to her August 2000 complaint. (*See* Pl.'s Br. at 7.) This argument suffers the same fate as plaintiff's other two attempts to establish her claim of retaliation. Plaintiff has failed to establish that the August 2000 and subsequent incidents amount to actionable sexual harassment, for the reasons discussed above. Therefore, these same incidents will not be found to constitute an adverse employment action sufficient to support her claim for retaliation. Having reached the conclusion that plaintiff has not established a prima facie case of retaliation, the court is of the opinion that defendant is entitled to summary judgment on plaintiff's retaliation claim.

## C. Plaintiff's State Law Claims

Plaintiff asserts pendent state law claims for assault and battery and invasion of privacy. To hold an employer liable for the intentional torts of its agent, Alabama law requires a plaintiff to show 1) that the agent's wrongful acts were done in the line and scope of his employment or in the furtherance of the employer's business, or 2) that the employer participated in, authorized, or ratified the wrongful acts. *Joyner v. AAA Cooper Transp.*, 477 So. 2d 364, 365 (Ala. 1985). The agent in this case, Jones, clearly was not acting within the course and scope of his employment or in the furtherance of AT&T's business when engaging in the alleged acts of sexual harassment. *See Busby v. Truswal Systems Corp.*, 551 So. 2d 322, 327-28 (Ala. 1989) (finding that alleged harasser's conduct "was aimed purely at satisfying his own lustful desires" and that "no corporate purpose

24

could conceivably be served by his overtures"). Plaintiff must therefore demonstrate that AT&T ratified the offending conduct. To make this showing, the plaintiff must first establish the elements of the underlying tort, and must then show that the employer:

> (1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take adequate steps to remedy the situation.

*Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999) (quoting *Potts v. BE & K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992) (emphasis added).

Plaintiff in the instant case does not attempt to establish that Jones actually committed assault and battery or wrongfully invaded her privacy. Rather, plaintiff focuses only on the issue of whether AT&T ratified Jones's conduct. (See Pl.'s Br. at 19-20.) In so doing, plaintiff's claims fail as a matter of law because AT&T cannot be held liable unless the plaintiff establishes that the wrongful acts actually occurred. *See Stevenson*, 762 So. 2d at 824 (setting forth three elements required for ratification that must be shown "*in addition* to the underlying tortious conduct"). While AT&T is entitled to summary judgment on this ground alone, plaintiff's failure to produce evidence that AT&T ratified Jones's conduct serves as an additional basis for summary judgment. The principal case relied upon by plaintiff, *Machen v. Childersburg Bancorporation, Inc.*, 761 So. 2d 981 (Ala. 1999), is factually distinguishable from the present case.

The court in *Machen* focused on what it referred to as the "unique circumstances of this case," and held that there was a genuine issue of material fact on the question of ratification. *Machen*, 761 So. 2d at 986. The alleged harasser in *Machen* was plaintiff's supervisor and president of the defendant bank, *id.* at 982, and had an apparent history of sexually harassing female employees

25

which was known to other officers of the bank, *id.* at 983. The officer who primarily handled the plaintiff's complaint was the chief executive officer of the bank and brother of the president and alleged harasser. *Id.* at 982-83. With respect to the plaintiff's first complaint, which involved lewd and sexually suggestive comments and offensive touching, the president was advised by his brother to "be careful" and to "be aware" of the bank's sexual harassment policy. *Id.* Plaintiff was then assured that any further incident would result in the president's dismissal, and was informed that "this had happened before." *Id.* at 983. Several months later, the president resumed making sexual innuendos to the plaintiff, and on one occasion grabbed her wrist, pulled her into his lap, and began rubbing her thighs. *Id.* at 983. The brother "handled" this incident as well by advising the president in a letter to "be aware of the consequences that such behavior could lead to." *Id.* No other action was taken and the president continued working at the bank until his retirement one year later. *Id.*

In contrast to the situation in *Machen*, AT&T immediately responded to plaintiff's complaint by initiating a full and thorough investigation, which included continuing contact with plaintiff and an on-site investigation by a representative within AT&T's EO/AA organization. (Riley Decl. ¶¶ 6, 7, 9, 10, 12.) During the course of the investigation, a total of eight employees were interviewed, in addition to plaintiff and Herman Jones. (*Id.* ¶¶ 10, 12.) Although the internal investigation revealed no evidence to substantiate plaintiff's allegation, AT&T nonetheless took several measures to address plaintiff's complaint. AT&T's prompt, thorough response lies in stark contrast to the defendant's minimal response in *Machen.* Plaintiff's contention that the measures were not effective is rebutted by her own testimony admitting that, since August of 2000 when AT&T began its investigation, Jones has had no physical contact or verbal interaction with her. (Yates Dep. at 118-19, 253.) Because plaintiff has failed to establish that AT&T ratified Jones's conduct, her state law

tort claims fail as a matter of law, and defendant is entitled to judgment as a matter of law on these claims.

## MOTION TO STRIKE

Federal Rule of Civil Procedure 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." These requirements are mandatory. *See C.M.S. Indus. Inc. v. L.P.S. Int. 'l, Ltd.*, 643 F.2d 289, 295 (5th Cir. 1981);[9] *Williams v. Hager Hinge Co.*, 916 F. Supp. 1163, 1168 (M.D. Ala. 1995). "[I]t is well-settled that a purported affidavit that does not meet the standards of Rule 56(e) is subject to a motion to strike and should not be considered by the Court" at the summary judgment stage. *Gore v. GTE South Inc.*, 917 F. Supp. 1564, 1570 (M.D. Ala. 1996).

Inadmissible evidence under Rule 56 includes hearsay statements, mere opinion testimony, and bald conclusions, without specific supporting facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985); *Williams*, 916 F. Supp. at 1168. To the extent an affidavit contains inadmissible evidence under Rule 56, the court may not consider such statements in resolving the pending summary judgment motion. *See Givhan v. Electronic Engineers, Inc.*, 4 F. Supp. 2d 1331, 1333-34 (M.D. Ala. 1998). Thus, an affiant's hearsay statement is not sufficient to create a genuine issue of material fact. *Macuba v. DeBoer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999); *Givhan*, 4 F. Supp. 2d at 1333. Speculative allegations regarding another's motives and activities also will not create a genuine issue of material fact under Rule 56. *See Wadsworth v. Nalco Chem. Co.*, 523 F.

---

[9]The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Supp. 997, 1000 (N.D. Ala. 1981), *aff'd* 679 F.2d 251 (11th Cir. 1982).  Simply stated, an affidavit

based on "information and belief" is insufficient as a matter of law.  *Givhan*, 4 F. Supp. 2d at 1334.

In addition, statements which contradict a witness's earlier testimony are not proper evidence

under Rule 56.  *Van T. Junkins & Assoc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984.)

In *Van T. Junkins*, the court rejected the plaintiff's affidavit as a sham because it contradicted the

plaintiff's earlier deposition testimony.  The court held, "When a party has given clear answers to

unambiguous questions which negate the existence of any genuine issue of material fact, that party

cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation,

previously given clear testimony."  736 F.2d at 657.

AT&T's Motion to Strike challenges various portions of the First and Second Declarations

of Julia Yates, including:[10]

> (i)     *Immediately afterwards [after the alleged kiss in August of 1999], he [Jones] would
> approach me and present himself in a flirtatious fashion which included unwanted
> touching and lewd body language.*

This portion is stricken in its entirety.  To the extent plaintiff alleges that Jones engaged in

"unwanted touching" subsequent to the alleged kiss incident of August 1999, the statement is

inconsistent with her deposition testimony admitting that after the August 1999 incident, Jones never

again made any physical advance of any kind toward her.  (Yates Dep. at 118-19, 219-20.)  The

portion of the statement referring to "lewd body language" is also stricken as a conclusory allegation

without specific supporting facts.

---

[10]The document referred to by the court as the First Declaration is attached as exhibit A to
defendant's motion to strike.  It is a document entitled "Affidavit and Declaration," and was signed
by Yates on May 3, 2002.  The document referred to by the court as the Second Declaration is
attached as exhibit B to defendant's motion to strike.  It is a document entitled "Declaration," is
largely handwritten, and was signed by Yates on May 3, 2002.

> (ii)   *They [AT&T] sent down Ms. Riley who acted as though she never believed a word I said. The problem with my complaint, she said, was that I had waited for a year to say anything.*

The first sentence is stricken because it contains speculation regarding another person's (Riley's) motives. The second sentence shall not be stricken.

> (iii)   *I was taken out from under his [Herman Jones's] direct supervision, yet, as a coach and supervisor, he still had the authority to check on all employees who worked there under him, of whom I was one, and make criticisms of their work to upper management.*

The statement is stricken beginning with the word "yet" and through the end of the sentence. Plaintiff's assertion that Jones had the ability to criticize her work appears to be based on her own subjective belief and opinion, not otherwise supported by the evidence and testimony of record. The statement is also contradicted by plaintiff's deposition testimony admitting that Jones had "no supervisory authority over [her] whatsoever" after she returned to work in August 2000. (Yates Dep. at 217-18, 219.)

> (iv)   *Herman Jones soon began to retaliate against me in that he would taunt me, make lewd gestures, and ogle me with his eyes.*

The statement does not contain any specific supporting facts to support plaintiff's perception of Jones's conduct. This statement is stricken in its entirety as a conclusory assertion based on plaintiff's subjective beliefs and perceptions.

> (v)   *The seats I would choose [after returning to work in August of 2000] would be purposely situated as far as possible from Herman Jones as I could get.*

This statement is stricken in its entirety as a self-serving statement which is inconsistent with plaintiff's prior deposition testimony that she chose to sit near Jones after returning to work in August of 2000. (*See* Yates Dep. at 256-57.)

29

(vi)   *In November 2001, Linda Jewel and I were having small talk about Thanksgiving. We began to discuss how many mouths we were going to have to feed. She looked at me smiling and began make [sic] rude comments on the status of my income. She then called me trailer trash and laughed insultingly at my intelligence and my integrity as a person.*

These statements are stricken in their entirety on grounds of hearsay and relevance.

(vii)   *She [Linda Jewell] again replied that she couldn't believe it was still happening. Exasperating herself as she heard my complaint, she acted as if she was tired of hearing about it from me.*

The second sentence is stricken because plaintiff is speculating about another person's (Jewell's) feelings or motives. The first sentence shall not be stricken.

AT&T's moves to strike additional statements in the First Yates Declaration. The court is of the opinion, however, that these portions should not be stricken. In addition, the court has considered these statements and finds that they do not have the effect of creating a genuine issue of material fact.

With respect to the Second Yates Declaration, AT&T moves to strike all statements contained therein as inconsistent with plaintiff's First Declaration, and on grounds that the statements constitute conclusory and speculative allegations without supporting facts. The court agrees, and strikes the Second Declaration in its entirety.

Plaintiff alleges in her First Declaration that she was unable to earn additional pay by working in the Internet group because Herman Jones serves as supervisor over this group. Plaintiff also admits in her First Declaration that she could have worked in other groups not supervised by Jones to earn additional pay. However, in her Second Declaration, plaintiff alleges that Jones had at least some supervisory authority over all groups which provide additional pay, and that she was therefore completely precluded from working in any of these groups. The evidence submitted by AT&T indicates that Jones had supervisory authority over the Internet group only, and that he had

30

no responsibilities or duties in connection with any other group which pays a differential. (*See* Jewell Decl. II ¶ 2.) Without making credibility determinations, the court finds that plaintiff's statements are not supported by specific facts or the record evidence, and that they are contradictory of each other as between the First and Second Declaration. The statement contained in plaintiff's First Declaration, admitting unequivocally that she could have worked in other areas not supervised by Jones, further dictates that the Second Declaration should be stricken in its entirety.

<b>CONCLUSION</b>

For the reasons stated herein, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted, and defendant's Motion to Strike is due to be granted in part, and denied in part. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 31st day of March, 2003.

**SHARON LOVELACE BLACKBURN**
United States District Judge